COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
  
NO. 2-02-338-CR
  
 
DANIEL ANTHONY GARCIA                                                    APPELLANT
   
V.
   
THE STATE OF TEXAS                                                                  STATE
   
------------
 
FROM THE 355TH DISTRICT COURT 
OF HOOD COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        A 
jury convicted Appellant Daniel Anthony Garcia of two counts of intoxication 
manslaughter and sentenced him to seventeen years’ confinement for each 
offense to be served concurrently. The parties are familiar with the facts of 
this case, and the controlling law is well-settled. We will affirm.
        In 
one point, Appellant complains that the evidence is factually insufficient to 
prove he operated the motor vehicle that caused the deaths of Billy Baker and 
Theresa McIntire.[2]  Specifically, Appellant 
directs us to the portion of Theresa Adams’s testimony, in which she testified 
that she did not witness the accident, and the portion of Stacy Glover’s 
testimony, in which she agreed that she was not “making a 100-percent 
identification” of Appellant as the driver.[3]
        We 
have carefully examined all of the evidence in the record concerning 
Appellant’s alleged operation of a motor vehicle in a neutral light, favoring 
neither party.[4]  Donald Herrin, who was 
Appellant’s employer, testified that he gave Appellant permission to use one 
of his company’s dual-wheel pickup trucks during the weekend covering 
September 1, 2001 while Herrin was out of town. Upon his return on September 1, 
2001, Herrin observed that neither the truck nor Appellant was in the RV park, 
where Appellant was living and where Herrin was keeping the truck. 
        Theresa 
Adams testified that, around 11:30 or 11:35 p.m. on September 1, 2001, she was 
working at a McDonald’s restaurant on Morgan Street near Highway 377, when she 
saw Appellant driving a green dual-wheel pickup truck through the drive-through 
window. Adams testified that Appellant’s speech was slurred, his eyes were 
halfway closed, and his mobility was impaired. In fact, she testified that 
Appellant fell asleep while waiting for his food and had to be awakened to 
receive his order. Adams observed Appellant leave McDonald’s around 11:45 and 
turn north on Morgan Street. As Appellant left the parking lot, Adams observed 
him hit a yellow pole with the front passenger side of his truck.
        Stacy 
Glover testified that she was driving south on Morgan Street on September 1, 
2001 when she saw two people riding on a motorcycle, which was also traveling 
south on Morgan Street. Glover testified that they both stopped at the light at 
Paluxy Highway and Morgan Street, and as the light turned green, she heard a 
“roaring noise” from behind. According to Glover, the noise was coming from 
a green pickup truck that did not have its headlights on and was moving at a 
“heavy rate of speed.” Glover testified that she was afraid the truck might 
hit her and that, as she glanced at the passing truck, she saw the truck’s 
driver by the street lights.
        Glover 
watched the truck drive onto the shoulder of the road, careen into a ditch, and 
then swerve over into her lane in front of her car, where it collided with the 
motorcycle. Glover testified that she saw sparks flying because the motorcycle 
was stuck underneath the truck and was being “drug over to the oncoming 
traffic.” Horrified, Glover went to a nearby Texaco gas station to tell a 
police officer about the accident and that two people had been killed. During 
trial, the medical examiner testified that Billy Baker and Theresa McIntire, the 
motorcycle’s passengers, died from injuries sustained during the collision.
        At 
11:52 Granbury police officer Richie Haught received an “attempt to locate” 
dispatch regarding a green one-ton, dual-wheel pickup truck that was without 
headlights and smoking heavily. Officer Haught found a truck emitting smoke and 
matching the description of the suspect truck in McKelvey’s Marina parking lot 
on South Morgan Street. As Officer Haught approached the truck, he saw that it 
was unoccupied, and he detected a strong odor of alcohol coming from inside the 
truck. The police later found a videotape that Baker and McIntire had rented 
from the Movie Gallery on September 1, 2001 lodged in the grille of the green 
dual-wheel pickup truck found at the marina. According to State’s Exhibit 28, 
McKelvey’s is located approximately 1000 to 1500 feet south of an EZ Mart.
        Glover 
testified that she went back to the scene of the accident and then proceeded 
south down Morgan Street. She decided to stop at the EZ Mart, which was around 
one half to three quarters of a mile south of the accident site. As she walked 
in, Glover saw a man standing at the counter who looked intoxicated. Thinking he 
was the driver of the truck involved in the accident, she stated aloud, “That 
looks like the driver of that truck.” The store clerk responded, “No, he 
does not drive. . . . He lives right there.”
        Not 
believing the clerk, Glover went to an officer at the marina and told him that 
“[t]here was a gentleman at EZ Mart that was drunk.” Glover also looked at 
the truck at the marina and told the officers that it was the truck she had seen 
hit the motorcycle. While Glover said at trial that she could not identify 
Appellant as the driver of the truck with 100 percent certainty, she agreed that 
the man in EZ Mart looked similar to the man that was driving the truck. On 
cross-examination, Glover agreed that she “got a momentary glance at the 
driver of the truck who was sitting above [her] eye level behind tinted windows 
in an area of road that was lit basically by street lights.”
        During 
the ensuing investigation, the police went to EZ Mart and brought Appellant to 
the truck at the marina. Adams also came by the marina after her shift ended, 
and the police told her that they suspected the green dual-wheeled truck had 
been involved in an accident. Adams told Officer Haught that “that vehicle 
just came through her line at McDonald’s and that she could identify the 
driver.” She identified Appellant as the driver of the truck.
        Appellant 
was taken to Lake Granbury Medical Center, where phlebotomist Francis Lloyd drew 
a sample of his blood. Appellant’s blood sample was tested, and the results 
showed that Appellant had a blood alcohol level of .314, which is nearly four 
times over the legal limit of .08.[5]  Lloyd 
testified that, while she took his blood, Appellant told her “that the police 
had told him that he had killed somebody,” but that “he was denying it.” 
Appellant admitted to Lloyd, however, that he had been upset that night and had 
been drinking at a bar. While Lloyd could not remember whether Appellant had 
said he was “driving” home, she testified that “[h]e said that he was 
going home . . . [that] he was on his way home and that he had gone the wrong 
direction.” Lloyd said that Appellant then started “talking about . . . the 
policeman being there and arresting him.”
        While 
Appellant was in jail awaiting trial, Herrin went to visit with him about the 
accident. When Herrin asked Appellant what had happened, Appellant told him that 
“he messed up . . [and] he was sorry.” Further, Herrin testified that 
Appellant told him that “he was in the truck by hi[m]self . . . the whole 
time.”
        Upon 
reviewing the evidence under the applicable standard of review,[6] 
giving due deference to the factfinder’s determinations, we conclude that the 
evidence presented at trial was factually sufficient to establish that Appellant 
was operating the motor vehicle that caused the deaths of Billy Baker and 
Theresa McIntire.
        We 
therefore overrule Appellant’s sole point and affirm the trial court’s 
judgment.
   
 
                                                       PER 
CURIAM
 
 
PANEL F:   GARDNER, 
LIVINGSTON, and DAUPHINOT, JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 
2(b)

DELIVERED: January 22, 2004
 
NOTES
1. 
See Tex. R. App. P. 47.4.
2. 
See Tex. Penal Code Ann. § 
49.08 (Vernon 2003); Freeman v. State, 69 S.W.3d 374, 376 (Tex. 
App.—Dallas 2002, no pet.) (stating that courts review the totality of the 
circumstances in determining whether a person was operating a vehicle).
3. 
See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003) (stating 
that a proper factual sufficiency review must include a discussion of the most 
important and relevant evidence that supports the appellant’s complaint on 
appeal).
4. 
See Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. 
State, 922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996).
5. 
See Tex. Penal Code Ann. § 
49.01(2)(B) (Vernon 2003).
6. 
See Johnson, 23 S.W.3d at 8-9; Clewis, 922 S.W.2d at 136.